UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. SMITTICK, ) | CASE NO. CV 18-01993-JFW (PJW) |
| ) | |
| Plaintiff, ) | ORDER DISMISSING ACTION FOR |
| ) | FAILURE TO PROSECUTE |
| v. ) | |
| ) | |
| UNITED STATES POST OFFICE, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

In March 2018, Plaintiff James W. Smittick filed a Complaint against Defendant the United States Post Office alleging what appeared to be claims for intentional infliction of emotional distress and fraud. (Doc. No. 1.) He alleged that employees at a post office in Boston, Massachusetts permitted Mr. Elkerenkotter, also known as "Reverend Ike," to take money from him through fraud and black magic. (Doc. No. 1 at 2.) Plaintiff alleged that in 1989 after hearing Reverend Ike on a radio station, he sent him $15 to a post office box located in Boston, Massachusetts. Once Reverend Ike received his money, the ground started moving in a bizarre and threatening manner, "shadows turned into people," and "tarantulas, scorpions, snakes, and brown recluse spiders appeared out of nowhere over 150,000 times." (Doc. No. 1 at 2.) Plaintiff further claimed that he had been stalked

by 200 to 2000 people in Honda cars, that $25,000 in social security

benefits was stolen from him, and that four employees at the Del Amo

post office located in Torrance, California tried to steal his

retirement checks.  (Doc. No. 1 at 2.)

In March 2018, the Court ordered Plaintiff to show cause by April

12, 2018, as to why the Complaint should not be dismissed on the

ground that Plaintiff had not stated a cognizable claim against

Defendant because his allegations were fantastical and delusional.

(Doc. No. 4.)  On April 10, 2018, Plaintiff filed a document, which

the Court construed as an attempt to comply with the Court's March

2018 order to show cause.  (Doc. No. 5.)  In it, Plaintiff explained

that employees at the John F. Kennedy Post Office ("JFKPO") in Boston,

Massachusetts were negligent and deliberately permitted Reverend Ike

to take his money through black magic.  (Doc. No. 5 at 1.)  He also

requested copies of the orders issued by the Court and an extension of

time to respond to the Court's orders.  (Doc. No. 5 at 3.)

On April 23, 2018, the court clerk sent Plaintiff copies of the

Court's orders and the Court granted Plaintiff an extension of time

until May 7, 2018, to explain why the Complaint should not be

dismissed with prejudice.  (Doc. No. 6.)  Plaintiff failed to file a

response.

On May 21, 2018, the Court ordered Plaintiff to show cause by May

31, 2018, as to why the Complaint should not be dismissed for failure

to state a cognizable claim.  (Doc. No. 7.)  Plaintiff did not respond

to that order, either.

It is well established that a district court has the authority to

dismiss an action for failure to prosecute and/or for failure to

comply with court orders.  Fed. R. Civ. P 41(b); *Link v. Wabash*

1 *Railroad Co.*, 370 U.S. 626, 629-30 (1962) (explaining district court

2 has authority to dismiss case for lack of prosecution in order to

3 prevent undue delays in disposition of pending cases and to avoid

4 congestion in court's calendar); *Ferdik v. Bonzelet*, 963 F.2d 1258,

5 1260-61 (9th Cir. 1992) (finding district courts have authority to

6 dismiss for failure to comply with court order).  The Court considers

7 five factors in evaluating whether dismissal is appropriate: (1) the

8 public interest in expeditious resolution of litigation; (2) the

9 Court's need to manage its docket; (3) the risk of prejudice to

10 defendants; (4) the public policy favoring disposition of cases on

11 their merits; and (5) the availability of less drastic sanctions.

12 *Ferdik*, 963 F.2d at 1260-61.

13     In this case, both the public's interest in the expeditious

14 resolution of cases and the Court's need to manage its docket weigh

15 strongly in favor of dismissal.  It appears that Plaintiff is no

16 longer interested in pursuing this action as he has not filed anything

17 since April 2018, despite the Court's orders to do so and its

18 prompting when he failed.  As a result, the case has come to a

19 complete standstill.

20     As to the third factor, prejudice to Defendants, this, too,

21 weighs in favor of dismissal.  Although Defendants have not yet been

22 served in this action--because there is no operative complaint--as

23 time goes by, witnesses' memories will likely begin to fade and

24 Defendants may suffer prejudice as a result.  *See In re*

25 *Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th

26 Cir. 2006) ("The law . . . presumes prejudice from unreasonable

27 delay.").

28

1  The fourth factor--the general policy favoring resolution of
2  cases on the merits--weighs in Plaintiff's favor.  *See Pagtalunan v.*
3  *Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors
4  disposition of cases on the merits.").  But that factor alone is not
5  sufficient to overcome the other four.
6  As for the fifth factor--the availability of less drastic
7  alternatives--the Court is unable to impose a lesser sanction here as
8  Plaintiff's refusal to comply with the Court's orders suggests that
9  nothing the Court can do or say will compel him to act.
10  Considering all five factors, the Court concludes that dismissal
11  for failure to prosecute is warranted.  *See Ferdik*, 963 F.2d at 1263
12  (concluding dismissal appropriate where supported by three factors);
13  *Pagtalunan*, 291 F.3d at 643 (same).
14  IT IS SO ORDERED.
15  DATED:    July 23, 2018.
16
17  _____
   JOHN F. WALTER
18  UNITED STATES DISTRICT JUDGE
19
20
21
22
23
24
25
   Presented by:
26
27  _____
   PATRICK J. WALSH
28  UNITED STATES MAGISTRATE JUDGE

C:\Users\imartine\AppData\Local\Temp\notesC7A056\Ord_dismiss.failure prosecute.wpd

4